# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 17-0281-WS |
| ) | |
| JASON BARBER, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter comes before the Court on defendant Jason Barber's Motion to Suppress (doc. 20), Motion for Trial in the Northern Division (doc. 21), and Motion for Disclosure of 404(b) Materials (doc. 22). All three Motions have been briefed and are now ripe.

**I.  Rule 404(b) Disclosures.**

In his Motion for Disclosure of 404(b) Materials, Barber requests that this Court "direct the Government to give pre-trial notice … of its intention to introduce evidence alleging Defendant's commission of other crimes, wrongs, acts and misconduct." (Doc. 22.) The Government's response does precisely that by notifying Barber that it may "introduce the facts of, and the facts underlying, Barber's prior arrests" (doc. 27, at 2), as set forth on pages 10 and 11 of the Report on Probation Office Conference (doc. 25). The Government having thus complied with its Rule 404(b) pretrial disclosure obligations, no judicial directive is necessary to achieve such compliance. Therefore, the Motion for Disclosure of 404(b) Materials is **moot**.

**II.  Motion for Trial in the Northern Division.**

Next, Barber moves for an order fixing the place of trial in the Northern Division of this District. As grounds for this request, Barber asserts the following: (i) the alleged offense occurred in Uniontown, Alabama, which lies in Perry County in the Northern Division; (ii) Barber (who is currently on conditions of release) resides in Uniontown, Alabama; and (iii) all of Barber's witnesses and all or most of the law enforcement witnesses reside in and around Uniontown, Alabama. In response, the Government concedes that Barber and any witnesses he may have "probably live in the Northern Division" and that several law enforcement witnesses live in the Northern Division, but also states that "no government witness would object to a

Mobile trial." (Doc. 27, at 1.) The Government generally posits that "prompt administration of justice favors a Mobile setting" (*id.* at 2), but does not identify any factors or considerations specific to this case that would militate against a Northern Division trial setting.

Defendant's Motion is governed by Rule 18, Fed.R.Crim.P., which provides that a district court "must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." *Id.* The Eleventh Circuit has explained that "[a] district court has discretion to fix the place of a trial in any division within the district." *United States v. Merrill*, 513 F.3d 1293, 1304 (11th Cir. 2008); *see also United States v. Dees*, 603 Fed.Appx. 777, 779 (11th Cir. Feb. 26, 2015) (finding no abuse of discretion where district court "considered all of the Rule 18 factors," including convenience of defendant and witnesses, as well as issues concerning prompt administration of justice, such as matters of security and the state of the court's docket generally, including the impact of trial location on timely disposition of the instant case and other cases).

After careful consideration of the Rule 18 factors, the Court agrees that a trial setting in the Northern Division is appropriate in this case. The convenience of Barber and witnesses strongly favors conducting the trial in Selma, rather than in Mobile. The convenience of the victim is a non-factor because this case does not involve a known or identifiable victim. And "prompt administration of justice" considerations do not counsel in favor of a Mobile setting here to a greater extent than they have in other recent cases in which judges of this District Court have fixed trials in Selma. Accordingly, Barber's Motion for Trial in the Northern Division (doc. 21) is **granted**. Pursuant to Rule 18, Fed.R.Crim.P., venue of Barber's trial is fixed for the federal courthouse in Selma, Alabama, in the Northern Division of this District.

**III. Motion to Suppress.**

Also pending is defendant's Motion to Suppress, which is directed at certain evidence seized from Barber's apartment and vehicle on or about March 26, 2017.[1]

---

[1] Among the items seized was a .38 caliber Rossi revolver, serial number AA517874, that law enforcement officers found beside the bed in the bedroom of the apartment. That firearm forms the basis of the single-count federal Indictment (doc. 15), which charges Barber with being a convicted felon in possession of a firearm on or about March 26, 2017, in violation of 18 U.S.C. § 922(g)(1). Also seized during the March 26 search warrant execution were plastic bags containing cocaine and marijuana, which were found in the spare tire well of a 2012 Kia Optima parked outside Barber's apartment. The Indictment does not charge Barber
(Continued)

### A.   Circumstances of Issuance and Execution of Search Warrant.

Record facts demonstrate that on March 24, 2017, Uniontown Police Department Lieutenant Adrian D. Watters submitted an Affidavit for Search Warrant (doc. 20-1) to Fourth Judicial Circuit Judge Donald McMillian. The Affidavit reflects that Lt. Watters had arranged for a confidential informant ("CI") to purchase marijuana from Barber at "the apartment at 121 Hare Circle Uniontown, Al" on March 16, 2017, and that Lt. Watters gave the CI $10 for that purpose. (Doc. 20-1.) Although the Affidavit is typewritten, the last two digits of the address appear to have been added by hand. There is no indication in the record as to when, where, or by whom such additions or corrections to the address listed in the Affidavit were made. According to the Affidavit, the CI "went to the resident [*sic*] where Jason Barber resides and purchased a plastic bag containing a green leafy substance," which he turned over to Lt. Watters at a designated "secret location" once the transaction was completed. (*Id.*) The Affidavit is devoid of any other details or information.

At 5:30 p.m. on March 24, 2017, Judge McMillian issued a Search Warrant authorizing a search of "the premises at 121 Hare Circle" for the purpose of seizing "illegal narcotics, marijuana, money and etc." (Doc. 20-2.) Similar to the Affidavit, the last digit of the address listed on the Search Warrant appears to be a handwritten addition or correction. Once again, the record lacks any explanation as to when, where or by whom that modification was made.

Two days later, Uniontown Police Department officers executed the Search Warrant at the residence located at 201 Hare Circle, Apartment 121, in Uniontown. Lt. Watters arrived on the scene shortly after other officers entered the home, which was occupied by Barber and a female companion. The officers found and seized a .38 caliber Rossi revolver in Barber's bedroom. They also searched an unlocked vehicle parked near the back entrance to Barber's apartment, which vehicle Lt. Watters recognized as belonging to Barber because he had witnessed Barber driving it during his investigation. (That said, it is not clear whether Lt. Watters had arrived on the scene prior to the vehicle search.) Search of the vehicle revealed marijuana and cocaine, which the officers also seized.

---

with any offenses relating to the controlled substances seized from the vehicle; however, Barber's Motion to Suppress nonetheless seeks exclusion of those items, and the Government opposes such relief.

### B. *The Confidential Informant's Reliability.*

Barber's Motion to Suppress challenges three aspects of the search as violative of his Fourth Amendment rights. First, Barber maintains that the Search Warrant is defective because the Affidavit lacks any indicia of the CI's reliability, as necessary to support probable cause. *See, e.g., Unted States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) ("If an informant is mentioned in the affidavit, the affidavit must also demonstrate the informant's 'veracity' and 'basis of knowledge.' … [W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.") (citations and internal quotation marks omitted).

The Government responds that while the Affidavit is silent as to the CI's reliability, Lt. Watters informed Judge McMillian at the time of the Search Warrant's issuance that he had used the CI in connection with other controlled buys that had resulted in issuance of search warrants.[2] Such facts, if borne out by the evidence, would supply the necessary CI reliability to support Judge McMillian's probable cause finding. Unfortunately, the Government submits these facts in the form of unsubstantiated statements by counsel in a brief, as opposed to a formal declaration or affidavit. As defendant correctly points out, Barber should not "be required to simply take the Government's word that the search warrant comports with the Fourth Amendment because of an undocumented oral exchange between Lt. Watters and Judge McMillian." (Doc. 32, at 7.) Accordingly, an evidentiary hearing is necessary to develop a record as to whether Lt. Matters made oral statements to Judge McMillian that might have

---

[2] The Government also indicates in its Response that Lt. Watters independently corroborated the CI's information because Lt. Watters "patted down the CI before the CI went to the home" and "saw the CI enter and leave Barber's home." (Doc. 28, at 1.) It is true that such independent corroboration may obviate the need for a separate showing of CI reliability for purposes of a probable cause analysis. *See, e.g., United States v. Hodges*, 616 Fed.Appx. 961, 964-65 (11th Cir. July 29, 2015) ("The circumstances of the two controlled purchases of marijuana provided sufficient independent corroboration of the CI's account such that there was no need to establish his veracity," where affidavits confirmed that officers searched CI and vehicle before and after the purchases and found marijuana only afterwards); *United States v. Parker*, 600 F. Supp.2d 1251, 1260 (M.D. Fla. 2009) (probable cause established even though affidavit included no facts establishing CI's reliability, where "affidavit describes a controlled buy that was observed by the officers"). There is no indication in the record, however, that any of this information was provided to Judge McMillian prior to issuance of the Search Warrant; therefore, such facts could not have weighed in the probable cause calculus.

established the necessary CI veracity / basis of knowledge / reliability aspects of the probable cause determination. Defendant is entitled to explore the Government's unvarnished factual allegations via live testimony and cross-examination at that hearing.[3]

### C. Description of the Place to Be Searched.

Second, Barber criticizes the Affidavit and Search Warrant for failing adequately to describe the premises to be searched. It is true, of course, that "[t]he Fourth Amendment requires … that the search warrant describe the premises in such a way that the searching officer may with reasonable effort ascertain and identify the place intended." *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986) (citation and internal quotation marks omitted); *see also United States v. Lisbon*, 835 F. Supp.2d 1329, 1345 (N.D. Ga. 2011) ("A warrant which fails to sufficiently particularize the place to be searched … is unconstitutionally overbroad and the resulting general search is unconstitutional."). Defendant's point is that the reference to "121 Hare Circle" is inaccurate. In fact, the Uniontown Apartments where Barber lived actually bore the address of "201 Hare Circle," and Barber lived in Unit 121 of those apartments; thus, the technically precise address was 201 Hare Circle, Apt. 121, which is not reflected on either the Affidavit or the Search Warrant.

Notwithstanding that omission, the Government insists that the particularity requirement is satisfied here because the reference to "121 Hare Circle" was close enough to comport with minimum constitutional guarantees. Specifically, the Government explains that (i) Hare Circle is a short cul-de-sac containing only the Uniontown Apartments, (ii) there is only one Unit 121 at the Uniontown Apartments on Hare Circle, (iii) there is only one Hare Circle in Uniontown, and (iv) there was no confusion here because the officers executing the Search Warrant did not go to the wrong home.[4] The Court agrees that the Search Warrant listing the premises to be searched

---

[3] To be clear, the Government is not limited at the hearing to making a showing that Lt. Watters specifically informed the issuing magistrate about the CI's past performance and demonstrated reliability. Insofar as Lt. Watters may have made other statements to Judge McMillian tending to provide independent corroboration of the CI's activities and information, the Government may present evidence to that effect as well.

[4] In that respect, the Government is correct that this Court's opinion in *United States v. Crabtree*, 77 F. Supp.3d 1192 (S.D. Ala. 2015), is readily distinguishable on the facts. *See id.* at 1194 (Fourth Amendment particularity requirement not satisfied where "[t]he place to be searched was an apartment in Saraland rented by defendant Howard and … the location (Continued)

as 121 Hare Court is sufficient for Fourth Amendment purposes because it describes the premises in such a way that the searching officer may with reasonable effort ascertain and identify the place intended. Simply put, given the geographic context, a reference to 121 Hare Court, Uniontown, Alabama, could only have meant unit 121 at the Uniontown Apartment complex found on Hare Court, and any reasonable officer could have readily ascertained same.

That said, one aspect of Barber's challenge to the specified search address requires further examination. As defendant accurately states, "It appears that the address initially put on the warrant and search warrant affidavit was whited out, and the number corrected at some point in time. There is no indication as to when this occurred or who made the correction …." (doc. 20, at 10.) Nothing in the Government's Response addresses those handwritten corrections, or offers any insights as to when, by whom, or why they were made. Thus, on this record, it cannot be ascertained whether the particularity requirement was satisfied at the time of the issuance and execution of the Search Warrant, or whether the document was corrected at some later time post-search to conform the address at which the search was authorized to that at which the search had actually been performed. Defendant is entitled to explore these topics at an evidentiary hearing.

### D.     *The Vehicle Search.*

Third, Barber's Motion to Suppress seeks to exclude the drug evidence seized from the 2012 Kia Optima automobile as being beyond the authorized scope of the Search Warrant. In defendant's view, "[t]his was a warrantless search of the car inasmuch as the search warrant did not include any premises other than the apartment named in the search warrant affidavit and subsequent search warrant." (Doc. 20, at 2.)[5]

On its face, the Search Warrant issued by Judge McMillian ordered and authorized law enforcement officers "to forthwith search the premises at 121 Hare Circle, Uniontown, Alabama

---

specified in the warrant [was] a house in Mount Vernon, some 15 miles away and occupied by another individual").

[5]     No federal charges were brought against Barber relating to the controlled substances seized from the Kia. Nonetheless, both sides appear to be operating under the assumption that the Government will seek to use that drug evidence against Barber at trial in this § 922(g)(1) prosecution. On the basis of that unchallenged assumption, the Court will consider this aspect of the Motion to Suppress on the merits.

for illegal narcotics." (Doc. 20-2.) The legal question raised by Barber is whether the word "premises" is sufficiently broad to include both Apartment 121 and the vehicle parked outside. Supreme Court precedent is clear that courts "regard the area immediately surrounding and associated with the home – what our cases call the curtilage – as part of the home itself for Fourth Amendment purposes." *Florida v. Jardines*, 569 U.S. 1, 6, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) (citation and internal quotation marks omitted). In that regard, binding appellate authorities have recognized that a vehicle parked in a driveway may be considered part of the curtilage of a residence and therefore included within the warrant's authorization to search "premises." *See, e.g., United States v. Napoli*, 530 F.2d 1198, 1200 (5th Cir. 1976) (holding that a search warrant's reference to "the premises known as 3027 Napoleon Avenue" authorized search of vehicle parked in driveway on such premises); *United States v. Armstrong*, 546 Fed.Appx. 936, 939 (11th Cir. Dec. 6, 2013) ("by authorizing the agents to search Mr. Armstrong's 'property,' the search warrant permitted them to search the Cadillac, which, it is undisputed, was located on the property described in the search warrant"); *United States v. Mitchell*, 503 Fed.Appx. 751, 754 (11th Cir. Jan. 8, 2013) ("The former Fifth Circuit held on several occasions that a warrant authorizing the search of an individual's property was sufficient to support a search of a vehicle parked on the premises.") (citations and footnote omitted).

In debating the application of the *Napoli* line of decisions to Barber's vehicle, the parties highlight a factual dispute as to the precise location of the 2012 Kia Optima at the time it was searched. The Government indicates that "[t]he car was adjacent to the back door entrance of the apartment" (doc. 28, at 6), but Barber maintains that such vehicle "was parked in the apartment complex parking lot" (doc. 20, at 2) and "in a parking space in an apartment's parking lot" (doc. 32, at 5) that was not part of the curtilage of Barber's apartment. Factual development on this point is necessary via evidentiary hearing in order properly to determine whether the 2012 Kia Optima was parked on the premises to be searched (in which case it was within the scope of the warrant) or not (in which case the vehicle search was an improper warrantless search).

### E. The Leon *Good Faith Exception.*

As something of an afterthought, both Barber and the Government provide superficial treatment of the *Leon* good-faith exception, pursuant to which "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *Martin*, 297 F.3d

at 1313. The Government suggests that even if the warrant obtained by Lt. Watters was lacking in probable cause, the exclusionary rule should not apply by virtue of *Leon* good-faith principles. The trouble with this contention is that the Government does not connect it to the particular concerns animating the need for an evidentiary hearing in this case. If Lt. Watters never informed Judge McMillian (either in the affidavit or orally) of any grounds for corroborating the CI's information or supporting his veracity, then Lt. Watters' showing would appear to be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Martin*, 297 F.3d at 1313, negating the good faith exception. If the Search Warrant were doctored after the fact to change the address of the premises to be searched to a different location than was authorized by Judge McMillian, then that circumstance might also render *Leon* principles inapplicable. And if the 2012 Kia Optima were not located on the curtilage of the premises, then the Government has not explained how *Leon* good-faith notions could prevent application of the exclusionary rule here. In short, the Government has not explained how the *Leon* exception would correct for the particular defects emphasized by Barber's Motion; therefore, the need for an evidentiary hearing remains in place.

IV. **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendant's Motion for Disclosure of 404(b) Materials (doc. 22) is **moot** because the Government has previously furnished defendant with the requested notice;

2. Defendant's Motion for Trial in the Northern Division (doc. 21) is **granted** and the Clerk of Court is hereby directed to place this case on the next available criminal trial docket for the Selma courthouse; and

3. This matter is hereby set for evidentiary hearing on defendant's Motion to Suppress (doc. 20) on **February 21, 2018** at **2:00 p.m.** in Courtroom 2A, United States Courthouse, Mobile, Alabama. As discussed *supra*, the purpose of this hearing is to resolve disputed or otherwise undeveloped facts on the following topics: (i) oral statements by Lt. Watters to the issuing judge relating to the CI's reliability or veracity, or the corroboration of facts given by the CI; (ii) the timing, circumstances and reasons for the modification of the numerical address provided in the Affidavit and Search Warrant; and (iii) the physical location of the 2012 Kia Optima relative to Barber's apartment, and whether that location was within

the curtilage of that residence. The suppression hearing shall confined to these enumerated issues, and both sides should be prepared to present evidence and argument tailored specifically to same.

DONE and ORDERED this 15th day of February, 2018.

                                        s/ WILLIAM H. STEELE
                                        UNITED STATES DISTRICT JUDGE